UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLAVONNE MORDHORST,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>　　　　　　　Defendant. | Case No. C10-5736-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Olavonne Mordourst seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She argues the ALJ erred by (1) rejecting her testimony that she needs to use a cane and has hypersomnia and (2) incorrectly finding that jobs as a surveillance monitor exist in significant numbers in the national economy. *See* Opening Brief, Dkt. 15 at 5-7. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Mordhorst is currently 46 years old, attended college for two years, and worked as an assistant restaurant manager, customer service clerk, and child care and home care provider. She applied for benefits in 2007 alleging disability beginning December 31, 2001. The ALJ found

REPORT AND RECOMMENDATION - 1

her not disabled after conducting a hearing on July 28, 2009. As the Appeals Council denied Ms. Mordhorst's request for review, the ALJ's decision is the Commissioner's final decision.

## ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ made the following findings:

**Step one:** Ms. Mordhorst had not worked since December 31, 2001.

**Step two:** Ms. Mordhorst's asthma, sleep apnea, left shoulder tenditnitis, lymphederma and obesity are severe impairments.

**Step three:** These impairments did not meet the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Ms. Mordhorst can perform sedentary work. She can walk or stand, with normal breaks, at least two hours but no more than six hours in an eight hour workday. She can sit six hours with normal breaks. She cannot climb ladders or scaffolds and can occasionally climb ramps, stairs, kneel, stoop or crouch. She has limited use of her nondominant left hand due to shoulder impairment that occasionally flares when she reaches. She must avoid fumes, odors, dusts and avoid work in poorly ventilated areas due to asthma.

**Step four:** Ms. Mordhorst cannot perform her past work.

**Step five:** As there are jobs Ms. Mordorst can perform she is not disabled.

Tr. 13-19.

## DISCUSSION

**A.    Whether the ALJ properly considered Ms. Mordhorst's testimony**

At the hearing before the ALJ, Ms. Mordhorst testified sleep apnea causes her to fall asleep for 20 to 30 minutes, three to four times a day[3] and that she has a cane[4] and sometimes uses a walker. Ms. Mordhorst argues the ALJ erred by failing to include these limitations in

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] Tr. 32-33.
[4] Tr. 34.

REPORT AND RECOMMENDATION - 2

assessing her residual functional capacity.  Dkt. 15 at 5.  The Commissioner contends the ALJ properly discounted Ms. Mordhorst's testimony as inconsistent with other statements she has made, and inconsistent with the medical evidence.  Dkt. 16 at 6.

The ALJ did not find Ms. Mordhorst was malingering and thus was required to give clear and convincing reasons to reject her testimony about the severity of her symptoms.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  In this case, the ALJ properly discounted Ms. Mordhorst's testimony about needing a cane but erred in rejecting her testimony about hypersomnia.

The ALJ did not specifically articulate why he did not believe Ms. Mordhorst's testimony about hypersomnia.  It appears the ALJ believed the medical evidence did not support her testimony.  As the decision states:

> The claimant also reported difficulty sleeping and indicated that she was hypersomnolent during the day.  Dr. Brown noted that the claimant kept trying to fall asleep during the history.  Dr. Brown assessed severe asthma with allergic non-allergic components, and sleep apnea by history but her hypersomnolent state would suggest the likelihood of the same.

Tr. 14.  This suggests the ALJ viewed Ms. Mordhorst's claims of hypersomnia as unsupported by objective medical evidence, based solely on her statements, and thus not credible. The medical record, however, does not support this view.  The ALJ mentions Ms. Mordhorst underwent an overnight polysomnogram which established she has "severe obstructive sleep apnea."  Tr. 14.  But what the ALJ fails to mention is this same overnight study indicated "[t]his patient has a profound problem with hypoxia, as well as obstructive sleep apnea.  The obstructive sleep apnea observed may result in daytime sleepiness."  Tr. 300.  Hence, there is medical evidence that supports Ms. Mordhorst's testimony about daytime sleepiness.

REPORT AND RECOMMENDATION - 3

The ALJ's error in rejecting Ms. Mordhorst's testimony for lack of medical evidence is not harmless in light of the vocational expert's testimony that Ms. Mordhorst would not be able to work as a surveillance monitor if she fell asleep several times a day.  Tr. 45.  At this point, the Court cannot say whether hypersomnia renders Ms. Mordhorst disabled or not.  While there is some medical evidence to support Ms. Mordhorst's hypersomnia claims, it is not well developed.[5]  Consequently, the case should be remanded for further proceedings, rather than for an award of benefits.

Although the ALJ erred in rejecting Ms. Mordhorst's testimony about hypersomnia, he properly rejected her claims about needing a cane or walker.  First, Ms. Mordhorst's testimony about needing a cane or walker is inconsistent with the statement she gave in her adult function report that she did not use a cane or a walker.  Tr. 131.  Second, it is also inconsistent with her testimony that five years after her alleged disability onset date, she worked part-time in adult home care and in daycare—activities that do not square with the need to use a walker.  Tr. 24.  And third, no doctor or lay witness indicated Ms. Mordhorst used or needed to use a cane or walker.

The Court recognizes that as Ms. Mordhorst is 5' 3", weighs over 270 pounds and has heart and pulmonary problems, it would be reasonable to believe she needs a cane or walker.  However, where, as here, the ALJ provides a rational interpretation of the evidence, this Court must uphold it.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Additionally, the ALJ found Ms. Mordhorst could perform work as a surveillance monitor.  The vocational expert

---

[5] The overnight study raising concerns about daytime sleepiness was conducted in 2006.  The study stated Ms. Mordhorst's sleep apnea "may" cause sleepiness, not that it does cause sleepiness.  Additionally, it is unclear whether Ms. Mordhorst's sleepiness is treatable, and has improved or worsened since the study.  Without further development, it cannot be determined whether hypersomnia renders Ms. Mordhorst disabled.

REPORT AND RECOMMENDATION - 4

1  testified this job involves sitting and watching a monitor.  Tr. 42.  Hence, even if Ms. Mordhorst

2  needs to use a cane, she would be able to perform this job and any error would be harmless.

3  **B.     Whether the ALJ properly found there are jobs Ms. Mordhorst can perform**

4         Dr. Joseph Moisan, a rehabilitation counselor and case manager, and vocational

5  consultant, testified as a vocational expert.  Tr. 39.  He testified Ms. Mordhorst could work as a

6  surveillance systems monitor, a job that would require her to sit in front of a monitor in

7  department stores, casinos or companies that provide home security monitoring; he testified there

8  are 58,000 such jobs nationally and 2,730 in Washington State.  Tr. 42.  Taking into account Ms.

9  Mordhorst's need for a relatively clean work environment, Dr. Moison estimated, based on his

10 personal experience visiting employers, that one-half of the jobs nationally would meet Ms.

11 Mordhorst's needs.  *Id.* at 43.

12        Ms. Mordhorst argues because Dr. Moison's opinion is based on his experience, he

13 provided insufficient "data regarding how many of these jobs at which Ms. Mordhorst would be

14 able to maintain employment due to environmental concerns, [and] it was error for the ALJ to

15 determine that Ms. Mordhorst was employable at this job."  Dkt. 15 at 6.  The Court rejects this

16 argument.

17        First, Dr. Moison appears qualified to give expert testimony and Ms. Mordhorst does not

18 argue otherwise.  As an expert, he may render opinions based on his experience.  Indeed,

19 experience is one of the recognized grounds to qualify a witness as an expert.  *See* Fed. R. Evid.

20 702.  Hence, there is no reason to discount Dr. Moison's opinion that, based on his experience

21 visiting employers, one-half of the surveillance jobs would meet Ms. Mordhorst's needs simply

22 because he was relying on his experience.

23        Second, Ms. Mordhorst argues Dr. Moison's opinion is not "quantified by the Dictionary

REPORT AND RECOMMENDATION - 5

1  of Occupational Titles." Dkt. 15 at 6.  This argument is made without discussion or supporting

2  authority and Ms. Mordhorst points to nothing in the DOT that undermines Dr. Mosion's

3  opinion.

4       And third, Ms. Mordhorst's argument implies there are not enough surveillance jobs that

5  meet her needs and thus she is disabled.  Whether there are a significant number of jobs a

6  claimant is able to perform with her limitations is a question of fact to be determined by a

7  judicial officer.  The existence of two "isolated jobs" is not adequate to support a finding that

8  there is a significant number of jobs the claimant is able to perform.  *Walker v. Matthews*, 546

9  F.2d 814, 820 (9th Cir. 1976).  However, Dr. Moison estimated 29,000 jobs nationally and 1,365

10  jobs in Washington State met Ms. Mordhorst's limitations.  Hence, this is not a case involving

11  "isolated jobs that exist only in very limited numbers in relatively few locations outside of the

12  region where you live." 20 C.F.R. § 404.1566(b).  The ALJ thus did not err in finding there exist

13  in significant numbers, surveillance systems monitor jobs that meet Ms. Mordhorst's limitations.

## CONCLUSION

15       For the foregoing reasons, the Court recommends that the Commissioner's decision be

16  **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand,

17  the ALJ should (1) further develop the medical evidence regarding Ms. Mordorst's hypersomnia;

18  (2) reevaluate the medical opinions in the record regarding hypersomnia; (3) reevaluate Ms.

19  Mordhorst's RFC as necessary; and (4) reassess, as necessary, steps four and five of the

20  sequential evaluation process with the assistance of a vocational expert if deemed appropriate.  A

21  ///

22  ///

23  ///

REPORT AND RECOMMENDATION - 6

1 proposed order accompanies this Report and Recommendation.

2 DATED this 6th day of May, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7